UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 08-CV-5057 (JFB)(WDW)
_____

UMAR ORIENTAL RUGS, INC.,

Plaintiff,

VERSUS

CARLSON & CARLSON, INC.,

Defendant.

_____

**MEMORANDUM AND ORDER**
December 29, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Umar Oriental Rugs (hereinafter "Umar" or "plaintiff") brought this negligence action against defendant Carlson & Carlson (hereinafter "Carlson" or "defendant"). Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the doctrines of *res judicata* and collateral estoppel bar plaintiff's claims. In addition to moving for summary judgment, defendant has moved this Court to issue sanctions against plaintiff in accordance with Rule 11 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants defendant's motion for summary judgment and denies defendant's motion for sanctions.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' affidavits, exhibits and Local Rule 56.1 statements of fact. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Thus with regard to defendant's motion for summary judgment, the Court shall construe the facts in favor of plaintiff. Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

In October of 2005, Umar obtained a Commercial Inland Marine insurance policy (hereinafter "the CIM") from Travelers Property Casualty Company of America (hereinafter "Travelers") to insure its rug inventory. (Def.'s 56.1 at ¶¶ 1-3.) Carlson acted as Umar's insurance broker in procuring the policy. (*Id*. at ¶ 2.) The CIM provided coverage for damages occurring between October 3, 2005 and October 3, 2006 for a maximum reimbursable amount of $500,000. (*Id*. at ¶ 3.) The CIM was one of four insurance policies that Umar obtained through Carlson from Travelers. (Pl.'s 56.1 at ¶ 4.)

On November 14, 2005, Travelers issued the first bill under the CIM to Umar, requiring a minimum payment of $1,156.00 against the total premium due of $4,375.00 (Def.'s 56.1 at ¶ 4.) According to Umar, it informed Carlson through its owner and agent that money credited to another insurance policy Umar had with Travelers (hereinafter the "Premium Return") should be applied to the CIM account to satisfy Umar's bill. (Pl.'s 56.1 at ¶ 4.) Umar alleges that Carlson agreed to execute such a transfer. (*Id*. at ¶¶ 4, 7.) Whether Umar asked and Carlson agreed to transfer the credit to the CIM account is disputed by the parties.

On December 14, 2005, Travelers issued a notice of cancellation to Umar for non-payment of its premium, identifying January 3, 2006, as the cancellation date for the policy. (Def.'s 56.1 at ¶¶ 5-6; Aff. of Jason J. Guiliano in Supp. of Carlson & Calson Inc.'s Mot. for Summ. J. (hereinafter "Guiliano Aff.") Ex. C.) In addition to the notice issued by Travelers, Carlson sent Umar three letter notices stating that Travelers had not received payment and that cancellation of the CIM was impending. (Def.'s 56.1 at ¶¶ 8-10.) Travelers did not receive payment by January 3, 2006, and consequently cancelled the CIM. (Guiliano Aff. Ex. M at 6.)

In May of 2006, a fire in Umar's store caused damage for which Umar sought reimbursement under the CIM. (Def.'s 56.1 at ¶ 12.) Travelers refused to cover any of Umar's damages, asserting that the CIM was cancelled. (*Id*. at 13.)

B. Prior Federal Court Proceedings

On September 14, 2006, Umar filed a suit against Travelers for breach of contract. (Guiliano Aff. Ex. M at 3. *See also Umar Oriental Rugs, Inc. v. Travelers Prop. Casualty Co. of Am.*, No. 06-CV-5001 (JFB) (ETB) (E.D.N.Y.) (hereinafter "*Umar v. Travelers*").) Umar alleged that Travelers breached the terms of the CIM. On a motion for summary judgment by Travelers, this Court concluded that Travelers's cancellation of the CIM was valid and effective as a matter of law. (Guiliano Aff. Ex. M at 6.) The case went to trial on the issue of whether Travelers was equitably estopped from canceling the CIM because Travelers's authorized agent—Carlson—had agreed to transfer a credit from another policy Travelers had with Umar to the CIM account. The issue of equitable estoppel was tried before a jury. During that trial, Douglas Carlson of Carlson testified as an agent for Travelers. (Def.'s 56.1 at ¶ 16.) The jury found that Umar did not prove by a preponderance of the evidence that it requested that Carlson transfer the Premium Return into the CIM account. (Guiliano Aff. Ex. L at 520:24-25; 521:1-6.) On October

2

30, 2008, this Court entered judgment for Travelers.

### C. Procedural History

Umar filed this action on December 15, 2008. Carlson answered two days later. Defendant filed the instant motion for summary judgment on May 21, 2010. Plaintiff filed its opposition brief on June 21, 2010 and defendant filed its reply on July 1, 2010. The Court has fully considered the submissions of the parties.

### II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone "will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Plaintiff asserts three causes of action against defendant, namely: (1) that Carlson was negligent in not providing a higher coverage amount under the CIM in excess of $1,214,239.14, the value of the losses suffered by plaintiff during the fire in its store; (2) that Carlson was negligent in not transferring the Premium Return to the CIM account, thereby causing the cancellation of the CIM policy; and (3) that Carlson is obligated to pay plaintiff's legal fees for the prosecution of this action. (Compl. ¶¶ 15, 26, 32.)

Defendant moves for summary judgment on all of plaintiff's claims.[1] Carlson argues that Umar's second cause of action—that Carlson was negligent in not transferring the Premium Return to the CIM account—is precluded by the doctrines of *res judicata* and collateral estoppel. Carlson further argues that because the second cause of action is barred, the first cause of action that Carlson was negligent in not providing a higher limit under the CIM must also be dismissed because it is dependent upon the existence of a valid policy at the time of the fire in Umar's store. Finally, Carlson moves this Court to sanction plaintiff and plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure. The Court addresses defendant's arguments in turn.

A. The Second Cause of Action

The second cause of action alleges that Carlson was negligent in not transferring the Premium Return to the CIM account, thereby causing the cancellation of the CIM policy. As set forth below, plaintiff's second cause of action is barred by the doctrines of *res judicata* and collateral estoppel.[2]

---

[1] Defendant asserts that plaintiff agreed in a letter to defendant's counsel to dismiss its claim for attorney's fees, allegedly conceding that New Jersey law does not permit such a recovery. (Def.'s Mem. at 21-22.) The letter from plaintiff's counsel cited by defendant is ambiguous on this issue. (*See* Guiliano Aff. Ex. N.) In any event, Plaintiff is not a prevailing (or successful) party in this action. As a result, the Court need not analyze whether or not plaintiff would have a valid claim for attorney's fees under New Jersey law if it had been a successful litigant in this case. In short, because the defendant is entitled to summary judgment on the first two causes of action, the third cause of action for attorney's fees also cannot survive summary judgment.

[2] The parties have not addressed in their motion papers whether the Court's *res judicata* analysis should be governed by state or federal law, simply citing New Jersey state court cases, as well as federal court cases to support their arguments. "The law governing the doctrine of *res judicata* in a diversity action is 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). New York and federal *res judicata* doctrines are "virtually identical." *Greenwich Life Settlements, Inc. v. Viasource Funding Grp., LLC*, – F. Supp. 2d – , 2010 WL 3895481, at *6 (S.D.N.Y. Oct. 4, 2010). *See also Duane Reade, Inc.*, 600 F.3d at 195. As a result, the Court applies federal *res judicata* law. *See Greenwich Life Settlements, Inc.*, 2010 WL 3895481 at *6 (applying federal *res judicata* doctrine where it was indistinguishable from New Jersey and New York *res judicata* doctrines); *Com Cor Holding, Inc. v. F.A. Tucker Transmission Co.*, No. 93 Civ. 8440(MBM), 1998 WL 283348, at *3 n.3 (S.D.N.Y. June 1, 1998) (applying federal *res judicata* doctrine where it was indistinguishable

1. *Res Judicata*

As discussed below, a necessary factual predicate for the negligence claim asserted in the second cause of action is that Umar requested to Carlson that it transfer the Premium Return to the CIM account. However, during the prior lawsuit between Umar and Travelers, the jury specifically found against Umar on this issue in determining that Umar did not prove that it had made such a request to Carlson, who was operating as Traveler's agent. Any separate theory that Carlson had an independent duty to transfer the Premium Return into the CIM account could have been brought in the previous lawsuit against Travelers, but was not. Given that Carlson (although not a party to the prior lawsuit) was in privity with Travelers and that there was an adjudication on the merits, this negligence claim against Carlson is precluded by the doctrine of *res judicata*.

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment. *See Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("[T]he defense of *res judicata* or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment."); *see Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992), *cert. denied*, 506 U.S. 821 (1992). In addition, the relevant facts for this motion, namely the previous judgment before this Court in *Umar v. Travelers*, are public documents subject to judicial notice, and are not in dispute. *See Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts.").

Under the doctrine of *res judicata*, otherwise known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (emphasis in original) (internal quotation marks omitted) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N. Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000). "In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first

---

from New York *res judicata* law). With respect to collateral estoppel, "[i]t is well established that federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment." *See Purdy v. Zeldes*, 337 F.3d 253, 258 n. 5 (2d Cir.2003).

judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id*. Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty*, 199 F.3d at 613.

The Court now proceeds to analyze each of these requirements and determines that the defendant has demonstrated that each has been met based upon the undisputed facts in this case.

### a. Umar's Claims Were or Could Have Been Brought in the Prior Action

Plaintiff alleges in its second cause of action that Carlson negligently failed to transfer the Premium Return to the CIM account. (Compl. ¶¶ 25-26.) According to plaintiff, the critical issue of fact to this argument "is whether Umar requested Carlson to notify Travelers of the credit discrepancy." (Pl.'s Opp. at 19.) This very issue was tried before a jury in *Umar v. Travelers*. In fact, it was the sole issue decided by the jury, which was asked to answer the following question:

> Did the plaintiff prove by a preponderance of the evidence that Umar requested that Carlson & Carlson transfer the credit from Umar's CGL policy with Travelers to the CIM policy in question?

*See* Guiliano Aff. Ex. L at 520:25, 521:1-4.) The jury's unanimous answer to that question was "no." (*Id*. at 521:6.)

For the first time, plaintiff raises an argument that Carlson was also negligent for failing to transfer the Premium Return because Carlson had an independent duty to transfer the credit into the CIM account whether or not plaintiff made a request for such a transfer. (Pl.'s Opp. at 19.) Plaintiff does not cite any caselaw in support of this new theory. In any event, plaintiff's new claim is barred by the doctrine of *res judicata* because it is based on the same series of facts and events as the claims brought in *Umar v. Travelers* and, thus, could have been brought in that litigation by joining Carlson as defendant to that suit. *See, e.g., Sure-Snap Corp. v. State St. Bank and Trust Co.*, 948 F.2d 869, 873-75 (2d Cir. 1991) (new claims could have been brought in the prior action because "the same transaction, evidence, and factual issues [are] involved"); *Coalition For A Level Playing Field, L.L.C. v. Autozone, Inc.*, – F. Supp. 2d – , 2010 WL 3590187, at *10 (S.D.N.Y. Sept. 7, 2010) (new claims are "intertwined" with claims brought in a previous proceeding and "easily could have been brought as part of that action"); *Wang v. Paterson*, No. 07 Civ. 2032(LTS)(AJP), 2008 WL 5272736, at *7 (S.D.N.Y. Dec. 18, 2008) (alternative holding) ("[A]s the instant claims arise out of the 'same transaction, occurrence or series of transactions or occurrences' as those in *Wang I*, Defendants named in their individual capacities in the instant case could have been joined in *Wang I* under Rule 20."); *Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 149-52 (D. Conn. 2005) (new claims brought against defendants in privity with defendants in a prior suit could have been brought as part of the prior litigation because they are based on the same "transaction or occurrence".).

### b. Prior Adjudication was on the Merits

*Umar v. Travelers*, the prior case at the heart of this dispute (including the central question of whether Umar requested that Carlson transfer the Premium Return to the CIM account in question) was tried before a jury and was, therefore, adjudicated on the merits.

### c. Parties Are in Privity

Plaintiff concedes that Carlson is the agent of Travelers, the defendant in *Umar v. Travelers*.[3] Therefore, Carlson is in privity with Travelers, and it does not matter that Carlson was not a defendant in plaintiff's action against Travelers. *See, e.g.*, *Liao v. Holder*, 691 F. Supp. 2d 344, 354 (E.D.N.Y. 2010) ("[C]ourts have found privity to exist in relationships such as: trustee and beneficiary; buyer and seller; fiduciary; agent; and cases where the parties represent the interests of the same person, such as in familial relationship.") (collecting cases); *Vargas v. Wughalter*, No. 08 Civ. 11378(DC), 2009 WL 2356832, at *4 (S.D.N.Y. July 30, 2009) (claim against defendant Tom Torres was dismissed on *res judicata* grounds because, among other things, plaintiff "alleges that Tom Torres is an agent of[,]" and consequently "in privity with[,]" defendant in the prior adjudicated dispute); *Tibbetts*, 354 F. Supp. 2d at 148 ("Generally, an employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." (quotation marks omitted)); *John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F. Supp. 2d 527, 542 (S.D.N.Y. 2001) ("Most courts of appeals have held that an agency relationship is sufficient to establish privity for the purposes of *res judicata*. . . . Finding privity in an agency relationship is consistent with the teaching of the Court of Appeals for the Second Circuit that privity is to be applied flexibly and is to be found where the new defendants have a sufficiently close relationship with the defendants in the first action." (citations and quotation marks omitted) (collecting cases)).

### 2. Collateral Estoppel

In the alternative, the Court concludes that collateral estoppel precludes plaintiff from bringing a negligence action against Carlson based on Carlson's failure to transfer the Premium Return to the CIM. "[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quotation marks omitted) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). If the prior judgment was rendered in federal court, as is the case here, the principles of collateral estoppel require that "'(1) the identical issue was raised in a previous

---

[3] Even without such concession, the Court concludes that the undisputed facts demonstrate as a matter of law that Carlson was an agent of Travelers for purposes of the transaction and policies at issue in this case.

proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

The Court concludes that the requirements for dismissal based on collateral estoppel are met with respect to plaintiff's theory that Carlson failed to transfer the Premium Return to the CIM. As discussed above, the undisputed facts demonstrate that Carlson is in privity with Travelers, the defendant in *Umar v. Travelers*. The other factors necessary to the collateral estoppel determination are addressed below.

### a. Identical Issue Actually Litigated and Decided

The identical issue of whether Umar requested that Carlson transfer the Premium Return to the CIM account was previously litigated and decided by a jury in *Umar v. Travelers*. *See supra* Section III.A.1.a.

### b. Full and Fair Opportunity to Litigate

"In the context of collateral estoppel, preclusive effect may be refused when there is a compelling showing of unfairness or inadequacy in the prior litigation." *See, e.g., Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1233 (Fed. Cir. 2006) (citing *Montana v. United States*, 440 U.S. 147, 163-64 (1979)); *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 126 (D.C. Cir. 1984) (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980) and *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971)). In *Blonder-Tongue* the Court indicated that the "full and fair" opportunity inquiry includes the question of "whether without fault of his own the [party against whom collateral estoppel is to be invoked] was deprived of crucial evidence or witnesses in the first litigation." 402 U.S. at 333.

There is no allegation that plaintiff was denied a full and fair opportunity to litigate the issue of whether or not it requested that Carlson make a transfer into the CIM account.

### c. Necessary to the Judgment

As previously noted, the issue of whether or not Carlson requested a transfer of funds into the CIM account was the sole issue decided by the jury before this Court. *See supra* Section III.A.1.a. As such, there is no question as to its necessity to the judgment.

\*     \*     \*

In sum, the Court concludes that the second cause of action is barred by the doctrines of *res judicata* and collateral estoppel, and defendant is entitled to summary judgment on that claim.

### B. The First Cause of Action

With respect to the first cause of action, plaintiff asserts that "Carlson was negligent in that Carlson should have provided CIM coverage with a limit in excess of $1,214,239.14," the value of the loss

suffered by plaintiff after a fire in its store. (Compl. ¶ 15.) However, this claim is not sustainable because it is predicated on the existence of a valid CIM policy at the time of the loss. As decided in *Umar v. Travelers*, the CIM policy was lawfully cancelled by Travelers and Travelers was not equitably estopped from cancelling the policy. Thus, the CIM was not in effect at the time of plaintiff's injury so that, even if the CIM provided for the higher coverage suggested by plaintiff, that coverage would be inapplicable to plaintiff's loss. Consequently, Plaintiff's alleged negligence in failing to provide a higher limit under the CIM could not have caused plaintiff's injuries. Accordingly, given that the second cause of action is precluded by *res judicata* and collateral estoppel, the Court concludes that the first cause of action is unsustainable as a matter of law, and defendant is entitled to summary judgment on that cause of action.[4]

### C. Motion for Sanctions

Carlson seeks to impose sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), against plaintiff and plaintiff's counsel. Specifically, Carlson claims that, in filing the complaint, plaintiff submitted a frivolous pleading that was not warranted by existing law and that plaintiff continued to pursue claims with no legal or factual basis despite letters from Carlson outlining the law on the doctrines of *res judicata* and collateral estoppel. (Pl.'s Mem. at 23-24.) Carlson also argues that plaintiff's action has been interposed for an improper purpose—namely, to extort settlement from Carlson. (*Id*. at 24.) For the reasons that follow, Carlson's motion for sanctions is denied.

As an initial matter, the Court notes that Carlson has not satisfied the procedural requirements for filing the instant motion. A request for sanctions must be made by separate motion, in accordance with Rule 11(c)(2) of the Federal Rules of Civil Procedure. In any event, the Court denies Carlson's motion. Under Rule 11, to avoid the risk of sanctions, a plaintiff's counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc*., 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 393 (1990)). In considering a motion for sanctions under Rule 11, this Court applies an "objective standard of reasonableness." *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc*., 73 F.3d 1253, 1257-58 (2d Cir. 1996). Moreover, "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal

---

[4] The Court also concludes, in the alternative, that the second cause of action must fail as a matter of law because, under New Jersey law, a broker has no duty to advise an insured to consider higher amounts of insurance. *See Carter Lincoln-Mercury Inc., Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1292 (N.J. 1994) (dictum); *Wang v. Allstate Ins. Co.*, 592 A.2d 527, 532 (N.J. 1991) ("We conclude there is no common law duty of a carrier or its agents to advise an insured concerning the possible need for higher policy limits upon renewal of the policy."). In other words, Carlson had no duty as an insurance broker to advise Umar to procure a policy with a higher limit. Thus, summary judgment also is warranted on this claim on this ground.

quotation marks omitted). Additionally, "when divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (emphasis in original) (internal quotation marks omitted).

The Court has no reason to believe that any of the factual allegations or legal arguments have been made in bad faith by plaintiff. Plaintiff attempted to cite caselaw in its favor in its opposition papers to defendant's motion for summary judgment. The fact that plaintiff's claims did not survive a motion for summary judgment does not warrant the imposition of sanctions in this case. *See, e.g.*, *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *see also Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987) (finding Rule 11 sanctions unwarranted, even when "[t]he evidence [plaintiff] presented not only failed to indicate discriminatory treatment, but instead revealed that [plaintiff] received several salary increases and promotions during his tenure. [Plaintiff] made no showing that other similarly situated members of the unprotected class were treated preferentially nor did he present evidence of retaliation. Under these circumstances, it is apparent that [plaintiff's] claim may be characterized as without foundation, but there is no evidence that he was in bad faith in bringing the claim, or that it was brought for any purpose other than to receive what he thought he was entitled to under the law."); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 NGG, 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90 CIV. 8280 (JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak."). *See generally Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (warning against the use of "hindsight logic" that "because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation").

In sum, there is insufficient basis to conclude that plaintiff or plaintiff's counsel filed this action in bad faith or that any other grounds for sanctions are present. Accordingly, Carlson's motion for sanctions under Rule 11 is denied.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted with respect to all of plaintiff's claims. Defendant's motion for sanctions is denied. The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 29, 2010
      Central Islip, New York

\* \* \*

The attorneys for defendant are: The Sullivan Law Group, LLP, 1350 Broadway – Suite 1001, New York, New York 10018. The attorneys for plaintiff are: Jeffrey A. Sunshine, P.C., 3000 Marcus Avenue – Suite 2E5, Lake Success, New York, 11042.